## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                          No. CR 04-1886 JB

WILLIAM STONE,

      Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the sentencing of Defendant William Stone. The Court held sentencing hearings on February 1, 2005 and February 8, 2005. The primary issue is whether the Court should accept the stipulated sentence in the Plea Agreement and deviate from the United States Sentencing Guidelines (the "Guidelines"). Because the Court concludes that sixty months is a reasonable sentence and that, although it varies from the Guidelines, the sentence will more effectively promote the sentencing goals outlined in 18 U.S.C. § 3553(a), the Court will accept the Plea Agreement and sentence Stone accordingly.

### FACTUAL BACKGROUND

Stone was born and reared in Alabama. See Pre-Sentence Report ¶¶ 37, 38, at 8-9 (re-disclosed January 14, 2005)(heirenafter "PSR"). He graduated from high school in Decatur, Alabama. See id. ¶ 47, at 10. Subsequent to his military discharge in 1994, he relocated and has since remained in Albuquerque. See id. ¶ 38, at 9.

At the time of the offense, The Boeing Company employed Stone as an aircraft integration technician. See id. ¶ 48, at 10-11. On September 17, 2004, Boeing terminated Stone's employment

because he was taken into custody.  See id.

In September 1986, Stone married Darcy Stone.  See id. ¶ 39, at 9.  Mrs. Stone related she had two daughters from a previous relationship, Shauna L., age 22, and Amber Barnes, age 21.  See id.  As young children and teenagers, both girls primarily resided with the biological father and paternal grandparents.  See id.

According to Mrs. Stone, Shauna, as a teenager, ran away from home several times.  See id. Mrs. Stone recalled that, when Shauna was approximately 16 years old, she was diagnosed as having multiple personalities and that she was hospitalized for approximately one month.  See id.  Shauna also reported that, as a child, she was in and out of a mental institution.  See id. ¶ 9, at 3.  Shauna related that, from 1993 through 2003, she had limited contact with Stone, as she resided with her biological father.  See id.

Mrs. Stone related that her daughters briefly resided with her and Stone in their late teen years.  See id.  The Stones reported that they provided both daughters with financial assistance in late 2003 and early 2004.  See id.  Shauna indicated that, in July 2003, she reconciled her relationship with her mother and Stone.  See id. ¶ 10, at 3.  She was having financial problems, and she was evicted from her residence in Las Cruces, New Mexico.  See id.  Her mother and Stone agreed to provide financial assistance during and after her relocation to Albuquerque, New Mexico.  See id.  She stated that, upon arrival in Albuquerque, her mother and Stone provided her with groceries, clothing, and vehicle repairs.  See id.  Shauna and her two children initially moved into an apartment with her sister's boyfriend.  See id.  Shauna husband was serving in the United States Army.  See id.  At that time, he was stationed in Germany and later deployed to Iraq.  See id.  Shauna subsequently obtained her own home within the property at Kirtland Air Force Base ("KAFB").

-2-

Shauna reported that between July 2003 and March 2004, Stone raped her on numerous occasions.  See PSR ¶ 8, at 3.  Shauna was 22 years of age at the time.  See id.  She alleged that Stone sexually assaulted her 13 times between July 2003 and March 2004 in Albuquerque, New Mexico; Truth or Consequences, New Mexico; and on KAFB.  See id.  She provided detailed information regarding three sexual assaults which occurred on KAFB; seven sexual assaults which occurred in the Albuquerque area; two assaults which occurred in hotels; and one sexual assault which occurred inside Stone's vehicle.  See id.

Shauna reported that the sexual assaults began in July 2003, shortly after she relocated to Albuquerque.  See id. ¶ 11, at 4.  Shauna reported that she never consented to Stone's sexual advances.  See id.  The victim told the military police and FBI she did not report the assault because she did not think anyone would believe her.  See id.

Shauna stated that, in March and May 2004, Stone sexually assaulted her in her home on KAFB.  See id. ¶ 12, at 4.   Shauna reported that, during each of the assaults, her children were asleep in one of the bedrooms.  See id.  One assault occurred in the bedroom and the other occurred on the couch in the living room.  See id.  Shauna reported that, on one of the occasions, she was afraid, so she reluctantly complied.  See id.

On June 30 or July 1, 2004, Stone went to her residence located on KAFB.  See id. ¶ 13, at 4.  Stone reportedly brought lunch for Shauna and her two children.  See id.  After the children were laid in their bedroom for a nap, Stone asked Shauna for a hug and, when she hugged him, he would not let her go.  See id.

On July 14, 2004, FBI agents interviewed Stone regarding the sexual assault allegations.  See id. ¶ 14, at 4.  Stone initially denied the allegations, but later admitted that he had consensual

intercourse and oral sex with Shauna on seven occasions.  See id.  On August 5, 2004, the FBI re-interviewed Stone.  See id. ¶ 15, at 5.  Stone admitted he physically forced the victim to have sex with him on eight separate occasions.  See id.

Mrs. Stone noted that she and her husband did not experience any sexual problems.  See id. ¶ 44, at 10.  She was not aware that her husband exhibited any abnormal sexual conduct or interests. See id. Mrs. Stone stated that, before her husband's arrest on the current offense, she was unaware of any sexual misconduct.  See id.  Shauna L. reported that her stepfather, Stone, had sexually assaulted her when she was a child.  Shauna L. recalled that she was approximately 11 years old when the first sexual assault occurred.  According to Shauna L., the police were contacted; however, after her mother and Stone pressured her, she recanted her statements about being molested.

Mrs. Stone related that, as a result of the allegations, her relationship with both daughters has deteriorated.  See id.  Mrs. Stone indicated that "the trust factor within the family is gone."  Id.  Mrs. Stone reported that, before the sexual misconduct allegations, she and Stone had a very good marriage.  See id. ¶ 39, at 9.  The United States Probation Office ("Probation") spoke to the victim, who confirmed that she does not have a close relationship with her mother.  See id. ¶ 40, at 9. Neither Mrs. Stone nor Shauna were able to provide a telephone number for Amber Barnes.  See id. ¶ 40, at 9.

Records from state court indicate that Mrs. Stone filed for a divorce on November 4, 2004. See id. ¶39, at 9.  The state court filed a Divorce Decree on November 15, 2004.  See id.

Mr. Stone reported being in good mental health.  See id. ¶ 45, at 10.  Mr. Stone denied the use of illegal drugs.  See id. ¶ 46, at 10.  He indicated he rarely consumes alcoholic beverages, and he has never participated in substance abuse treatment.  See id.  Mrs. Stone confirmed this

information.  See id.

Probation conducted a prior record inquiry through the National Crime Information Center and in the City of Albuquerque, where Stone lived after retiring from the Air Force.  See id. ¶ 32, at 7.  Stone does not have an arrest history.  See id. ¶¶ 33-34, at 7-8.  He has no juvenile adjudicatory and no adult criminal convictions.  See id.  The total of Stone's criminal history points is 0.  See id. ¶ 35, at 8.

Probation communicated with the victim on two occasions.  See id. ¶ 19, at 5. On November 1, 2004, Shauna stated that, subsequent to reporting the sexual assaults to the military police and to the FBI, she had very little contact with her mother.  See id.  Shauna advised she is currently pregnant by her spouse, and she plans to relocate to Kentucky with him in December, 2004. See id.  She had not communicated with Stone since his arrest.  See id.  She has not participated in counseling.  See id. ¶ 19, at 6.

Stone has been in federal custody since August 11, 2004.  See id. ¶ 48, at 10.

## PROCEDURAL BACKGROUND

On September 29, 2004, Stone entered a guilty plea to a one-count information charging Aggravated Sexual Abuse in violation of 18 U.S.C. §§ 2241(a)(1), 2246(2) and (A), and (7)(3).  See Plea Agreement ¶ 3, at 2, filed September 28, 2004  (Doc. 16).  The Plea Agreement provides: "The United States and the defendant agree pursuant to Rule 11(c)(1)(C), Fed. R. Crim. P., that the agreed upon term of incarceration shall be sixty months (5 years)."  Id.  ¶ 5(a), at 2.

The PSR assigns Stone a total offense level of 28 and a criminal history category of I.  See PSR ¶¶ 30, 35, at 7-8.  Under the Guidelines, Stone's sentence range is 78 to 97 months.  See id. ¶ 55, at 14.  Probation recommends a sentence of sixty months, pursuant to rule 11(c)(1)(C) of the

Federal Rules of Criminal Procedure.  See PSR ¶¶ 3, 56, at 2, 14.

The Court held a sentencing hearing on February 1, 2005.  The Court raised concerns about the proposed sentence that departed or deviated from a Guideline sentence.  Stone and the United States, argued that the Court should accept the sentence stipulated in the Plea Agreement for a number of reasons. Stone argued that the sentence was appropriate because, before this incident, Stone demonstrated a lifelong respect for the law.  See Transcript of Hearing at 5:15-18 (February 1, 2005)(hereinafter "Transcript").[1]  Stone is 50 years old, and the PSR indicates that he has no other juvenile adjudications or adult convictions.  See PSR ¶¶  33, 34, at 7-8.  He served in the United States Air Force for 20 years.  See id. ¶ 50, at 11.

The United States argued that the stipulated sentence reflected its concern for the victim's well-being. See February 1, 2005 Transcript at 13:1-16.  The United States explained that the victim has a history of mental illness, see id. at 14:5-9, that it had questions about whether Stone and the victim had a consensual sexual relationship, see id. at 14:20-24, and that the victim had previously alleged sexual abuse, but recanted, see id. at 14:25-15:5.  In reaching a plea agreement, the United States concluded that a trial would be an extreme hardship and emotional distress on the victim.  See id. at 16:2-5.  Accordingly, the United States concluded it was in the victim's interest to resolve the case quickly, without a trial.  See id. at 13:6-16, 14:5-9.

The United States argued that the Guidelines authorized a downward departure under this case's circumstances.  Accordingly, Stone orally moved for a downward departure.  See id. at 17:9-8. The United States concurred in the motion.  The Court adopted the PSR's factual findings, to which

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

no one objected.  The Court granted the motion and a downward departure of 3 levels, which meant a sentence range of 57 to 71 months.  The Court then sentenced Stone to sixty months, the middle of the Guideline range and consistent with the plea agreement.

After the hearing, the Court researched the issue and determined that the Guidelines do not authorize a downward under the case's facts and circumstance.  The Court then held a hearing within seven days of the sentence, pursuant to rule 35(a) of the Federal Rules of Criminal Procedure, to correct its clear error.  At that second sentencing hearing, the Court denied the motion for a downward departure, but deviated from the Guidelines to impose a sentence of 60 months.

## LAW ON SENTENCING

In United States v. Booker, 543 U.S. ___, 125 S. Ct. 738, 2005 U.S. LEXIS 628 (2005), the Supreme Court of the United States excised 18 U.S.C. § 3553(b), the provision of the Sentencing Reform Act that made the Guidelines mandatory.  See United States v. Booker, 125 S.Ct. at 756-57, 2005 U.S. LEXIS 628 *52 (Breyer, J.).  The Supreme Court indicated that the Guidelines are "advisory."  Id.  Judges must consider the Guidelines sentencing range, but must also consider the other factors set forth in 18 U.S.C. § 3553(a).  See id.

Section 3553(a) sets out factors a court is to consider in imposing a sentence.  Section 3553(a) directs courts to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)."  18 U.S.C. § 3553(a).  Paragraph (2) indicates those purposes are:

[T]he need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and

to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).  Section 3553(a) further directs courts to consider: (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); (ii) "the kinds of sentences available," 18 U.S.C. § 3553(a)(3); (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6); and (iv) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

## LAW ON DOWNWARD DEPARTURES

Section 5K2.0(d)(4) of the Guidelines indicates that "a departure may be based on justifiable, non-prohibited reasons as part of a sentence that is recommended, or agreed to, in the plea agreement and accepted by the court." U.S.S.G § 5K2.0(d)(4).  See also U.S.S.G. § 6B1.2(c)("[T]he court may accept the agreement if the court is satisfied . . . the agreed sentence departs from the applicable guideline range for justifiable reasons.").

Section 5K2.0 of the Guidelines provides grounds for departure from the applicable guideline range:

§ 5K2.0.  Grounds for Departure (Policy Statement)

(a) UPWARD DEPARTURES IN GENERAL AND DOWNWARD DEPARTURES IN CRIMINAL CASES OTHER THAN CHILD CRIMES AND SEXUAL

-8-

OFFENSES.

    (1)  In General. The sentencing court may depart from the applicable guideline range if–

    (A)  in the case of offenses other than child crimes and sexual offenses, the court finds, pursuant to 18 U.S.C. § 3553(b)(1), that there exists an aggravating or mitigating circumstance; or

    (B)  in the case of child crimes and sexual offenses, the court finds, pursuant to 18 U.S.C. § 3553(b)(2)(A)(i), that there exists an aggravating circumstance,

of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described.

U.S.S.G. § 5K2.0(a)(1). Section 5K2.0(a)(1) thus indicates that, in child crimes and sexual offenses, the court may only consider "aggravating circumstance[s], of a kind, or to a degree, not adequately taken into consideration," not mitigating circumstances. U.S.S.G. § 5K2.0(a)(1)(B). Section 5K2.0(a)(2) indicates that, for crimes which are not child crimes or sexual offenses, "circumstances of a kind not adequately taken into consideration" may include "unidentified circumstances." U.S.S.G. § 5K2.0(a)(2)(B).

Subsection (b) of § 5K2.0 provides for downward departures in child crimes and sexual offenses. It states:

Under 18 U.S.C. § 3553(b)(2)(A)(ii), the sentencing court may impose a sentence below the range established by the applicable guidelines only if the court finds that there exists a mitigating circumstance of a kind, or to a degree, that–

(1) has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28, United States Code, taking account of any amendments to such sentencing guidelines or policy statements by act of Congress;

(2) has not adequately been taken into consideration by the Sentencing Commission in formulating the guidelines; and

(3) should result in a sentence different from that described.

The grounds enumerated in this Part K of Chapter Five are the sole grounds that have been affirmatively and specifically identified as a permissible ground of downward departure in these sentencing guidelines and policy statements. Thus, notwithstanding any other reference to authority to depart downward elsewhere in this Sentencing Manual, a ground of downward departure has not been affirmatively and specifically identified as a permissible ground of downward departure within the meaning of section 3553(b)(2) unless it is expressly enumerated in this Part K as a ground upon which a downward departure may be granted.

U.S.S.G. § 5K2.0(b).  The Application Notes for § 5K2.0 explain that the standard for downward departures in child crimes and sexual offenses is different than the standard for other offenses. The Application Notes indicate that § 5K2.0(b)(1) requires that "any mitigating circumstance that forms the basis for such a downward departure be affirmatively and specifically identified as a ground for downward departure in this part (i.e. Chapter Five, Part K)."  U.S.S.G. § 5K2.0, n. 4(B)(i). Thus, in a child crime or sexual offense, a court may not consider "unidentified circumstances" in determining whether a mitigating circumstance is one that has "not adequately [been] taken into consideration by the Commission." U.S.S.G. § 5K2.0 n. 4(B)(ii).

## ANALYSIS

While a district court should be hesitant to deviate or vary from the Guidelines where the Guidelines would not permit a departure, the Court concludes that a downward departure is not permitted in this case, but that nonetheless the punishment set forth in the Guidelines is not appropriate for this offense.  The Court concludes that sixty months is a substantial sentence and

adequately reflects the factors in § 3553(a).  The Court shares the United States' concern that, if the

Court does not accept the plea agreement that the United States has reached with Stone, and the

matter proceeds to trial, the victim may not function well as a witness and there is no conviction.

**I.      SECTION 5K2.0 PROHIBITS A DOWNWARD DEPARTURE IN THIS CASE.**

Stone admitted guilt to Aggravated Sexual Abuse in violation of 18 U.S.C. §§ 2241(a)(1),

2246(2) and (A), and (7)(3).  Under § 5K2.0, "the term 'child crimes and sexual offenses' means an

offense under any of the following: 18 U.S.C. § 1201 (involving a minor victim), 18 U.S.C. § 1591,

or chapter 71, 109A, 110, or 117 of title 18, United States Code."  U.S.S.G. § 5K2.0 n.4(A).  Section

2241 and § 2246 are provisions of chapter 109A.  Thus, Stone's crime is considered a sexual offense

under § 5K2.0.

For sexual offenses, § 5K2.0 prohibits courts from considering "unidentified circumstances"

in determining whether a mitigating circumstance is one that has "not adequately [been] taken into

consideration by the Commission."  U.S.S.G. § 5K2.0, n. 4(B)(ii).  Neither the United States nor

Stone has pointed to any "identified circumstances" that the Guidelines have not adequately taken

into consideration.  Because the Court concludes it is unable to rely on "unidentified circumstances,"

the Court declines to grant a downward departure.

**II.     A DEVIATION OR VARIATION FROM THE GUIDELINES IS NONETHELESS
        WARRANTED.**

The Court has fully considered the kinds of sentences available and the applicable sentencing

range based on the Guidelines and concluded that the Guidelines do not authorize a downward

departure.  See 18 U.S.C. §§ 3553(a)(3), (4).  The Court, however, concludes that "the agreed

-11-

sentence departs from the applicable guideline range for justifiable reasons." U.S.S.G. § 6B1.2(c); See also United States v. Bernand, 373 F.3d 339, 343-44 (3rd Cir. 2004)(holding "a sentencing court has the authority to accept a plea agreement . . . specifying a sentence that falls outside the applicable guideline range")( United States v. Goodall, 236 F.3d 700, 705 (D.C. Cir. 2001)(holding district court could accept and agreed-upon sentences outside the applicable guideline range); United States v. Barnes, 83 F.3d 934, 941 (7th Cir. 1996)("Plea agreements can retain their authority to bind the government, the defendant and the district court even when they provide for sentences that depart from the prescriptions of the guidelines.").

The Supreme Court in United States v. Booker directs this Court to consider the factors set out in 18 U.S.C. § 3553(a) in imposing a sentence. Section 3553(a) first directs courts to consider the nature and circumstances of the offense in imposing a sentence. In this case, there is evidence that the victim engaged in consensual sex for a period of time before the crime to which Stone now pleads. There is evidence that the victim made similar allegations in her youth, but recanted. There is also evidence that the victim suffers from multiple personalities and is not mentally stable. The Court is concerned that if it rejects this plea agreement and forces the matter to trial, the United States may not secure a conviction. Moreover, the Court is mindful that the victim wants Stone's case brought to a close and that she may suffer extreme emotional distress and hardship if Stone's case is tried. Given the nature and circumstances of this offense, the Court concludes that a sixty month sentence is appropriate.

The Court has also considered Stone's history and characteristics, and whether a sentence of 60 months reflects the seriousness of his offense, promotes respect for the law, and provides just

punishment for his offense.  <u>See</u> 18 U.S.C. §§ 3553(a)(1), (2).  Stone is 50 years old.  He served in the United States Air Force for 20 years and has no criminal history.  Before this conviction, Stone was married and employed as an aircraft integration technician.  Since this incident, however, Boeing has terminated Stone's employment and Stone's wife has divorced him.  Stone has suffered a lot as a result of his crime.  The deviation is eighteen months less than the Guideline sentence.  The Court concludes that a sixty month term of incarceration, coupled with Stone's personal losses, reflects the seriousness of his offense, promotes respect for the law, and provides just punishment.

Additionally, Stone's sentence requires him to register with the state sex offender registration agency in the state where he resides, works, or is a student.  Stone must participate in a mental health treatment program and a sex offender treatment program.  Stone may not possess any materials depicting and/or describing sexually explicit conduct or child pornography.  Stone must submit to searches for the purpose of detecting sexually explicit material.  Also, Stone must have no contact with children under 18 without permission from his probation officer.   Again, the Court concludes that a sixty month sentence, in combination with these additional conditions, affords adequate deterrence, protects the public, and provides Stone with needed correctional treatment.  <u>See</u> 18 U.S.C. 3553(a)(2).

In light of these factors and the other sentencing goals in 18 U.S.C. §3553(a), the Court declines to impose a sentence within the range proscribed by the Guidelines.  The Court concludes that 60 months is a reasonable sentence and that, although it varies from the Guidelines, it will more effectively promote the sentencing goals outlined in 18 U.S.C. § 3553(a).

**IT IS ORDERED** that the Plea Agreement is accepted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David Iglesias
  United States Attorney
    for the District of New Mexico
Marron Lee
Glynette Carson
  Assistant United States Attorneys
Albuquerque, New Mexico

      *Attorney for the Plaintiff*

Susan Dunleavy
  Assistant Federal Public Defender
Albuquerque, New Mexico

      *Attorney for the Defendant*